```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
UNITED STATES OF AMERICA,                :
                                         :
            Plaintiff,                   :    04 Cr. 1231 (JSR)
                                         :
         -v-                             :    OPINION AND ORDER
                                         :
THOMAS ALLAMON,                          :
ENRIQUE W. IGLESIAS, and                 :
T. GERALD CHILTON, JR.,                  :
                                         :
            Defendants.                  :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

By Order dated October 1, 2005, the Court denied the various motions of the remaining defendants Iglesias and Chilton for severance and to dismiss Count Three for lack of venue.[1] This Opinion And Order reconfirms those rulings and briefly states the reasons therefor.

The superseding indictment charges defendant Iglesias with wire fraud and money laundering in connection with a scheme to purloin Microsoft stock. A third count charges Iglesias and Chilton with conspiracy to commit wire fraud in connection with an advance fee scheme. Both defendants moved to sever Count Three from the other counts on grounds of improper or prejudicial joinder. See Fed. R. Crim. P., Rules 8 and 14. Alternatively, Chilton moved under Rule 14 to sever his trial from that of Iglesias. Finally, both defendants moved to dismiss Count Three for lack of venue.

As to Rule 8, severance in a multi-defendant case is assessed according to the standard set forth in Rule 8(b), see United States

---

[1] Defendant Allamon previously pleaded guilty.

v. Turoff, 853 F.2d 1037, 1043-44 (2d Cir. 1988); United States v. Papadakis, 510 F.2d 287, 299-300 (2d Cir. 1975), to wit, whether the allegations stem from "the same series of acts or transactions, constituting an offense or offenses." Under Rule 8(b), joinder is proper where the allegations are "unified by some substantial identity of facts or participants" or "arise out of a common plan or scheme." See also United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989) (internal quotations omitted). Here, there is a substantial identity of participants, and a common fraudulent approach unifying the counts. Defendant Iglesias and co-conspirator Thomas Allamon participated in both schemes, see, e.g., United States v. Rittweger, 259 F. Supp. 2d 275, 284 (S.D.N.Y. 2003) ("This important overlap of two out of the five named participants demonstrates a substantial identity of participants in the two sets of counts and supports joinder."), and while the schemes had different immediate objects, they shared similar features overall. See, e.g., United States v. Saad, 380 F. Supp. 2d 286, 288 (S.D.N.Y. 2005). Thus, joinder was not improper.

As for Rule 14, under Rule 14(a) "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). However, where, as here, joinder

is proper, "a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in 'substantial prejudice.'" United States v. Amato, 15 F.3d 230, 237 (2d Cir. 1994) (quoting Turoff, 853 F.2d at 1043).

Iglesias argues that if the counts remain joined, he will be prejudiced because the Government's evidence on Count Three will allegedly be much stronger than the evidence on the other counts. However, the only reason he gives for this assertion is the fact that Count Three embraces five separate advance fees, whereas the other counts relate to a single transfer. But the mere fact that more schemes or transfers are embraced by Count Three than by the other counts does not necessarily render that count stronger, let alone create the substantial prejudice warranting severance. Indeed, the prejudice to Iglesias is effectively none, since, even if Count Three were severed and the trial of that count deferred, it is likely that the evidence of the advance fee scheme set forth in Count Three would be admissible in the trial of the Microsoft scheme to prove knowledge, intent, and the like pursuant to Rule 404(b), Fed. R. Evid. When evidence of the charge to be severed is otherwise admissible, there can be no prejudice from joining the counts. See United States v. Lane, 474 U.S. 438 (1986); United States v. Tarricone, 996 F.2d 1414, 1422 (2d Cir. 1993); United States v. Afjehei, 869 F.2d 670, 674 (2d Cir. 1989).

Defendant Chilton's motion to sever Count Three so that he may be tried separately from Iglesias must also be denied. Under

3

Rule 14, "a district court should grant a . . . severance motion only when 'there is a serious risk that a joint trial [of the two defendants] would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003) (quoting Zafiro v. United States, 506 U.S. 534, 539 (1993)). Here, Chilton has not identified a specific trial right that would be compromised, and, given the overall simplicity of the charges, there is no reason to believe that the jury could not make a reliable judgment about individual guilt or innocence. See United States v. Jackson, No. 90-cr-109, 1990 U.S. Dist. LEXIS 13148, *7 (S.D.N.Y. Oct. 5, 1990). While Chilton may not have been involved in the Microsoft scheme, "[t]o the extent that evidence is admissible only against other defendants, [he] has failed to show that proper limiting instructions would not be adequate to protect his rights." United States v. Vega, 309 F. Supp. 2d 609, 615 (S.D.N.Y. 2004); see also Jackson, 1990 U.S. Dist. LEXIS at *7.

In the end, the only motion that is even colorable is the defendants' joint motion to dismiss Count Three -- the advance fee conspiracy -- for lack of venue. To determine if venue is proper, the court "must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999). Where an offense was "begun in one district and completed in another . . . [it] may be . . . prosecuted in any district in which such offense was begun, continued, or

4

completed." 18 U.S.C. § 3237; see also id. § 3237(a) (providing that "[a]ny offense involving the use of the mails, transportation in interstate or foreign commerce . . . is a continuing offense and . . . may be inquired of and prosecuted in any district from, through, or into which such . . . mail matter . . . moves").

Here, the Government argues that venue in this District is proper because the defendants executed their scheme in part by generating interest in Iglesias' company, TMC Group, Ltd., by posting false representations on its website that were thereby conveyed to the Southern District of New York. Recently, the Second Circuit applied similar reasoning in holding that a defendant could be charged with advertising to receive child pornography based on an Internet posting that appeared in the Southern District of New York, even though the website was set up elsewhere. United States v. Rowe, 414 F.3d 271, 277-80 (2d Cir. 2005). The Court found it irrelevant that the defendant "did not intentionally transact business with a New Yorker . . . [because the defendant] must have known or contemplated that the advertisement would be transmitted . . . to anyone the whole world over." Id. at 279 (internal quotations omitted).

Here, too, the defendants "must have known or contemplated that [their website] would be transmitted . . . to anyone the whole world over." Moreover, the defendants encouraged individuals the whole world over to use their website to contact TMC Group Ltd. about obtaining financing. Beneath an informational paragraph about TMC Group's financing advisory services, the website contained an active

5

link viewers could use to fill out a request form to have information sent to them via email.  Thus, the defendants' reliance on civil cases dealing with "passive" websites is misplaced.  See, e.g., Hsin Ten Enter. United States v. Clark Enters., 138 F. Supp. 2d 449, 460 (S.D.N.Y. 2000).  Moreover, the concerns about forum shopping that understandably contribute to courts' reluctance to base venue on passive websites in civil cases have less relevance here in a criminal prosecution under federal law.

Finally, the Second Circuit applies a "substantial contacts" test to ensure that "the two chief ills that the constitutional venue provisions are meant to guard against -- bias and inconvenience -- are not substantially present."  See Rowe, 414 F.3d at 279-80; see also United States v. Ramirez, Nos. 03-1262-cr, 04-726-cr, 2005 U.S. App. LEXIS 18048, *22 (2d Cir. Aug. 23, 2005).  While this test can "take[] into account a number of factors [such as] the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for factfinding," Rowe, 414 F.3d at 278 (internal quotations omitted), here, there is no reason to think that the values underlying this test are in jeopardy, see Ramirez, 2005 U.S. App. LEXIS at *22.

Accordingly, for the foregoing reasons, defendants' various severance motions and their motion to dismiss Count Three for lack of venue are denied.  Counsel are reminded that trial of this case will commence promptly at 9 a.m. on November 29, 2005.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       October 10, 2005